IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RUBEN LACK, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION |
| SHANNON KERSEY, EMILY REISER, and MICHELLE WERE, in their official and individual capacities; and FULTON COUNTY SCHOOL DISTRICT, | : | FILE NO.: 1:12-cv-00930-RWS |
| Defendants. | : | |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

COMES NOW, SHANNON KERSEY (hereinafter referred to as "Kersey"), EMILY REISER (hereinafter referred to as "Reiser"), MICHELLE WERE (hereinafter referred to as "Were"), and the FULTON COUNTY SCHOOL DISTRICT (hereinafter referred to as the "School District") (collectively referred to as "Defendants"), appearing herein specially and without submitting to the jurisdiction and venue of this Court, and hereby file this Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction (Doc. 2). Defendants expressly reserve their rights to raise any and all affirmative defenses and to file a motion to dismiss. Defendants have not yet been served and did not receive notice that a hearing had been set in this matter until Tuesday, March 27, 2012. Thus,

this Memorandum simply provides an overview of the law, and Defendants will submit factual evidence wither by live testimony or by declarations. The facts developed therein and on Thursday, March 29, 2012 are hereby incorporated into this Memorandum.

## I. **INTRODUCTION**

"The constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings." Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 682, 106 S. Ct. 3159 (1986). Indeed, the "freedom to advocate unpopular and controversial views in schools and classrooms must be balanced against society's countervailing interest in teaching students the boundaries of socially acceptable behavior." Id. at 681. Thus, school officials have discretion to control student expression where they can reasonably forecast that the expression will cause a substantial disruption of school activities or will invade the rights of others. Tinker v. Des Moines Indep. Community Sch. Dist., 393 U.S. 503, 514, 89 S. Ct. 733 (1969). School officials are also given discretion to control student expression which the public might reasonably perceive to bear the "imprimatur of the school." Hazelwood Sch. Dist. V. Kuhlmeier, 484 U.S. 260, 271, 108 S. Ct. 562 (1988).

Defendants contest the allegation that Plaintiff Ruben Lack (hereinafter referred to as "Plaintiff") was removed from his position based on his exercise of

any First Amendment right. However, even if the Court were to accept Plaintiff's representation of the facts as true, an injunction and/or temporary restraining order is improper because administrators have discretion to control student speech where the expression substantially disrupts school activities and/or could be perceived to bear the "imprimatur of the school." Scott v. Sch. Bd. of Alachua County, 324 F.3d 1246, 1248 (11th Cir. 2003).

The United States Supreme Court has specifically addressed the importance of allowing administrators the discretion to make such decisions. In Morse v. Frederick, 551 U.S. 393, 409, 127 S. Ct. 2618 (2007), the Court noted that school principals have a "difficult and vitally important job," as they often must act – or decide not to act – on the spot. It is thus improper for any court to "trench on the prerogatives of state and local educational institutions." Alabama Student Party v. Student Gov't Ass'n of the Univ. of Alabama, 867 F.2d 1344, 1347 (11th Cir. 1989).

## II. ARGUMENT AND CITATION

A.  **Legal Standard For Preliminary Injunction / Temporary Restraining Order.**

The legal standard for a preliminary injunction and temporary restraining order (TRO) is (1) "a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction

3

might cause the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest." Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005).

**B.    Plaintiff Cannot Prove The Elements For Issuance Of a Preliminary Injunction and/or TRO.**

*1. Plaintiff is not substantially likely to prevail on the merits.*

Plaintiff cannot prove entitlement to the issuance of a preliminary injunction and/or TRO for two reasons. First, the facts in this case will reveal Plaintiff was not removed from his position as President as a result of the exercise of his First Amendment rights. Second, even if the exercise of Plaintiff's First Amendment rights were involved in the decision to remove him (which Defendants deny), Plaintiff cannot establish a retaliation claim.

In order to state a claim for retaliation for exercising First Amendment rights, a plaintiff must prove that (1) his speech or act was constitutionally protected; (2) the defendant's retaliatory conduct discourages the protected speech; and (3) a causal connection exists between the retaliatory conduct and the adverse effect on speech. See Keeton v. Anderson-Wiley, 664 F.3d 865, 878 (11th Cir. 2011).

*a. Plaintiff's actions are not constitutionally protected.*

In student free speech cases, First Amendment rights must be analyzed in light of the special characteristics of the school environment. See Keeton, 664

F.3d at 871. Indeed, the Eleventh Circuit has specifically found that school administrators may restrict or control student speech in at least two circumstances:

> School officials "can appropriately censure students' speech under either of the following two theories. First, from the Tinker case, school officials are on their most solid footing when they reasonably fear that certain speech is likely to "appreciably disrupt the appropriate discipline in the school." Second, from Fraser, even if disruption is not immediately likely, school officials are charged with the duty to 'inculcate the habits and manners of civility as values conducive both to happiness and to the practice of self-government.' To do so, they must have the flexibility to control the tenor and contours of student speech within school walls or on school property, even if such speech does not result in a reasonable fear of immediate disruption."

Scott, 324 F.3d at 1248 (internal citations omitted).

Courts have examined this precise issue and have found that students' First Amendment rights are not violated where a school official disqualifies/removes a student from a leadership position. In Henerey v. City of St. Charles, 200 F.3d 1128 (8th Cir. 1999), the court held school officials are entitled to disqualify a student for student council where that student failed to abide by school rules. The court also noted school officials are entitled to disqualify a student for his actions in "distributing material that ran counter to the District's pedagogical concern and its educational mission." Id. at 1136.

Similarly, in Poling v. Murphy, 872 F.2d 757 (6th Cir. 1989), the court held a student may be disqualified from running for student council as a result of his

discourteous remarks about the assistant principal during a school assembly. The court noted that "civility is a legitimate pedagogical concern." Id. at 758.

### i. *The cases cited in Plaintiff's Brief are distinguishable.*

Plaintiff supports his argument that an injunction is proper in the current case by citing Reineke v. Cobb Co. Sch. Dist., 484 F. Supp. 1252 (N.D. Ga. 1980). However, this case involves free speech issues relating to a student newspaper and is thus factually distinguishable from the case at hand. Further, the Reineke case was decided eight years before the Supreme Court decided the Hazelwood case, which is the seminal case on student newspaper free speech issues.

In Hazelwood, the Supreme Court found that schools may place limits on what appears in school-sponsored student publications. Plaintiff also cites Holman v. Harland, 370 F.3d 1252 (11th Cir. 2004) in his brief. However, the Eleventh Circuit declined to extend the holding of Holman in Bar-Navon v. Brevard County School Bd., No. 07-15639, 2008 WL 3822612 (11th Cir. 2008). The Court stated "[Holman] provides no binding precedent - or even substantial guidance - when a content-neutral regulation of conduct that expresses no political message is at issue." Id. at *1.

Plaintiff also attempts to support his argument by referencing several cases which discuss students' rights to speak on the issue of gay/lesbian rights. However, the facts in this case will reveal that administrators did not attempt to

stifle any of Plaintiff's speech, much less any speech regarding sexual orientation. Indeed, Paragraph 13 of Plaintiff's Declaration reveals that Plaintiff was provided the opportunity to introduce a resolution to "make the 'prom royalty' tradition inclusive to gay and lesbian couples." Plaintiff also states in this paragraph that an "active discussion developed" surrounding this issue. According to Plaintiff's own admission in Paragraph 14 of his Declaration, *Plaintiff* made the motion to table the council's discussion of the "Prom Royalty" resolution. All students in attendance except for Plaintiff voted in favor of this motion. Thus, any cases which involve a student's First Amendment right to speak on the topic of homosexuality are irrelevant in the current case.

There is no factual dispute that (1) Plaintiff was permitted to speak on this issue; and (2) Plaintiff's "Prom Royalty" resolution was not a factor in the administrators' decision to remove Plaintiff from office.

Finally, Plaintiff cites several cases to support his argument that his Facebook exchange with another student is protected speech. However, whether or not this speech is protected is irrelevant, as it was not a factor in the administrators' decision to remove Plaintiff from office. Plaintiff focuses on the close time proximity between the Facebook exchange and the meeting with administrators to discuss the fact that Plaintiff would be removed from office. However, it is clear that "temporal connection alone" is not enough to show a retaliatory motive.

McCook v. Spriner School Dist., No. 01-2157, 2002 WL 1788529, at *9 (10th Cir. 2002).

> *b. Defendants' conduct does not discourage protected speech.*

In order to prove the second prong of the retaliation test, Plaintiff must establish that Defendants' allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Bennett, 423 F.3d at 1255. The facts in this case will reveal the school administrators' rationale for removing Plaintiff from office, a rationale that had nothing to do with Plaintiff's exercise of any rights under the First Amendment. The evidence will also clarify that no reasonable person would be deterred from exercising his/her First Amendment rights as a result of Defendants' conduct. Thus, Plaintiff's claim for retaliation must fail.

> *c. There is no causal connection between the alleged retaliatory conduct and the alleged adverse effect on speech.*

"In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take adverse action because of the protected speech." Keeton, 664 F.3d at 878. In Keeton v. Anderson-Wiley, a student argued that her university retaliated against her for exercising her First Amendment right to express her personal religious views regarding homosexuality. Id. The Court of Appeals for the Eleventh Circuit held that the school officials placed this student on a remediation plan because she was unwilling to comply

with school rules, not because she expressed her views on homosexuality. Id. Thus, the Court found that the plaintiff failed to meet her burden to establish the school officials were subjectively motivated to take the adverse action by the plaintiff's protected speech. Id.

The facts in this case will reveal that Plaintiff's speech did not motivate Defendants' decision to remove Plaintiff from office. Further, even if the Court were to accept Plaintiff's version of the facts as true, Georgia law provides that if the defendant can show he/she would have taken the same action in the absence of the protected conduct, the defendant cannot be held liable. Castle v. Appalachian Tech. College, 631 F.3d 1194, 1197 (11th Cir. 2011). Because the evidence will clearly establish that school administrators would have taken the same action in the absence of any supposed protected speech on the part of Plaintiff, Plaintiff's claim for retaliation must fail.

2.  *Plaintiff Has Not Suffered Irreparable Injury.*

A showing of irreparable injury is "the sine qua non of injunctive relief." Siegel v. LaPore, 234 F.3d 1163, 1176 (11th Cir. 2000). It cannot be presumed, even where there is a violation of constitutional rights. See Siegel, 234 F.3d at 1177 ("Plaintiffs also contend that a violation of constitutional rights always constitutes irreparable harm. Our case law has not gone that far, however."). In all cases, a movant for a preliminary injunction against a state or local government

must present facts that show a "real and immediate" threat of substantial, irreparable harm before a federal court will intervene. O'Shea v. Littleton, 414 U.S. 488, 494 (1974); see also, Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994)("[A] party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate-as opposed to a merely conjectural or hypothetical-threat of *future* injury"). Moreover, "[l]ogically, a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past." Id. (citations and quotations omitted). The Eleventh Circuit has "emphasized on many occasions, the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" Siegel, 234 F.3d at 1176-77 (quoting Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990)).

Plaintiff argues that a loss of First Amendment rights is always an irreparable injury. However, the Eleventh Circuit has clearly indicated otherwise. Further, Plaintiff has failed to meet his burden to show that he is likely to succeed on his underlying First Amendment claim. Finally, Plaintiff cannot establish irreparable injury because serving on the student council is a privilege, not a right. Poling, 872 F.2d at 764. Thus, administrators were entitled to withdraw this privilege when Plaintiff failed to abide by the Student Council Bylaws. Because

Plaintiff cannot show irreparable injury, his motion for a preliminary injunction should be denied.

3. *Damage to Defendants Outweighs Any Damage to Plaintiff.*

On a motion for an injunction Plaintiff bears the burden of showing that his perceived injuries outweigh the damage that the injunction might cause to Defendants. Baker, *supra*, 856 F.2d at 169. In the current case, Defendants will be damaged in many ways, including but not limited to: (1) substantial disruption of school activities (see Tinker, 393 U.S. 503); (2) loss of ability to teach students the boundaries of socially appropriate behavior (see Fraser, 478 U.S. 675); and (3) risk that the public will perceive Plaintiff's actions to "bear the imprimatur of the school" (see Hazelwood, 484 U.S. 260). Plaintiff failed to demonstrate any injuries in his brief which come close to outweighing the above-described damage to Defendants.

Notably, Plaintiff and his attorney have chosen to involve the media in this case immediately after filing the instant action. They have brought to bear upon Alpharetta High School, its administrators, teachers and, most importantly, students, national media attention that none of them ever deserved. Returning Plaintiff as the President of the Student Council would be like throwing gasoline on the fire that is the media circus the Plaintiff and his attorney have created.

There can be no more disruptive action that to allow Plaintiff to return as Student Council President.

Furthermore, in addressing the third prong of the test of injunctive relief, a court should consider whether the injunctive relief being sought is prohibitory or mandatory, as is the case here. "Only in rare instances is the issuance of a mandatory preliminary injunction proper." Harris v. Wilters, 596 F.2d 678, 680 (5th Cir. 1979). Where, as here, the injunction would give Plaintiff all or most of the relief to which he would be entitled if he was successful at trial on the merits, preliminary relief may be "excessively burdensome." Wright & Miller, *Federal Practice and Procedure*, § 2948.2 (2d ed. 1995). Second, as the Supreme Court of the United States has cautioned,

> where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.... When the frame of reference moves from a unitary court system....to a system of federal courts representing the Nation, subsisting side by side with 50 state judicial, legislative, and executive branches, appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief.

Rizzo v. Goode, 423 U.S. 362, 378-79, 96 S. Ct. 598, 608-09, 46 L.Ed.2d 561 (1976)(citations omitted). "[T]hese principles [h]ave applicability where injunctive relief is sought, not against the judicial branch of state government, but against

those in charge of an executive branch of an agency of state or local governments...." Id. at 380.

   4.   *Injunction Would Be Adverse to the Public Interest.*

To prevail on a motion for injunctive relief and/or a TRO, Plaintiff must show that the injunction will not be adverse to the public interest. Bennett, 423 F.3d at 1250. Plaintiff cannot meet this burden, as granting Plaintiff's motion would require the Court to "trench on the prerogatives of state and local educational institutions." Alabama Student Party, 867 F.2d at 1347. The court has found "[a]cademic freedom thrives not only on the independent and uninhibited exchange of ideas among teachers and students, but also, and somewhat inconsistently, on autonomous decisionmaking by the academy itself." Id. Thus, courts must defer to school officials who "seek to reasonably regulate speech and campus activities in furtherance of the school's educational mission." Id.

In the current case, Plaintiff asks the Court to intervene and remove the school's right to make decisions autonomously. If his motion for a preliminary injunction were granted, this decision would set dangerous precedent as school officials would no longer feel empowered to make decisions which further the school's educational mission. Thus, Plaintiff's motion for a preliminary injunction is clearly adverse to the public interest and must be denied.

**C.    Plaintiff Does Not Seek to Preserve the Status Quo**

The purpose of a TRO is to preserve the status quo. Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers, 415 U.S. 423, 439, 94 S.Ct. 1113 (1974). The status quo refers to the last uncontested status that preceded the parties' controversy. GoTo.com v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000). A request for a preliminary injunction that disturbs the status quo must be denied by the trial court. See Bell Atl. Bus. Sys. Servs. v. Hitachi Data Sys., 856 F. Supp. 524, 525 (N.D. Cal. 1993).

If the Court were to grant Plaintiff a TRO in the current case, such decision would not preserve the status quo. Instead, it would provide Plaintiff with all of the relief he would receive if he was ultimately successful in proving his First Amendment claim against Defendants. Thus, Plaintiff's motion for a preliminary injunction must be denied.

**E.    Certification Under Local Rule 7.1(D).**

Pursuant to Local Rule 7.1(D), the undersigned counsel for Defendant certifies that its MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION has been prepared in Times New Roman, 14-point type, which is one of the font and point selections approved by the Court in Local Rule 7.1(D).

Specially Appearing Defendants hereby reserve any and all affirmative defenses available and waive no such defenses by being forced to file this response brief.

Respectfully submitted this 28th day of March, 2012.

        **BROCK, CLAY, CALHOUN & ROGERS, LLC**
        Attorneys for Defendants


        /s/ Todd E. Hatcher
        Todd E. Hatcher
        thatcher@brockclay.com
        Georgia Bar No. 337507

400 Galleria Parkway
Suite 1440
Atlanta, Georgia 30339
Marietta, GA 30060-1977
770-422-1776 (telephone)
770-426-6155 (facsimile)

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| RUBEN LACK, | |
| Plaintiff, | |
| v. | CIVIL ACTION |
| SHANNON KERSEY, EMILY REISER, and MICHELLE WERE, in their official and individual capacities; and FULTON COUNTY SCHOOL DISTRICT, | FILE NO.: 1:12-cv-00930-RWS |
| Defendants. | |

## CERTIFICATE OF SERVICE

This is to certify that on March 28, 2012, I electronically filed **MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

James Radford
150 E. Ponce de Leon Ave., Suite 260
Decatur, Georgia 30030

This 28th day of March, 2012.

**BROCK, CLAY, CALHOUN & ROGERS, LLC**
Attorneys for Defendants

_/s/ Todd E. Hatcher_
Todd E. Hatcher
thatcher@brockclay.com
Georgia Bar No. 337507

400 Galleria Parkway
Suite 1440
Atlanta, Georgia 30339
770-422-1776 (telephone)
770-426-6155 (facsimile)

1334455_1