**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| REUBEN LACK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:12-CV-930-RWS |
| SHANNON KERSEY, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ORDER**

This case comes before the Court on Plaintiff's Motion for a Temporary Restraining Order [2] and Plaintiff's Amended Motion for a Temporary Restraining Order [9]. Following a hearing on the matter and after a review of the record, the Court enters the following order.

Plaintiff, Reuben Lack, has asked this Court for a temporary restraining order which would reinstate him as Student Body President at Alpharetta High School ("AHS"). Plaintiff maintains that he has been removed for asserting his First Amendment right to free speech, while Defendants argue that they removed him for non-speech reasons, specifically his lack of follow-through, lack of respect for his advisors, rigidity, and insistence upon taking unilateral

AO 72A
(Rev.8/82)

action when he was not authorized to do so. It is settled law in this Circuit that a temporary restraining order is an "extraordinary and drastic remedy[.]" <u>Zardui-Quintana v. Richard</u>, 768 F.2d 1213, 1216 (11th Cir. 1985).  To obtain such relief, a movant must demonstrate:

> (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest.

<u>Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.</u>, 299 F.3d 1242, 1246-47 (11th Cir. 2002).

### A. Substantial Likelihood of Success on the Merits

Plaintiff's claim is essentially a First Amendment retaliation claim; i.e., that he was removed from office because he supported the Prom King and Queen change, made a speech to incoming freshmen which referenced the debate team, and engaged in an off-campus Facebook message conversation with another student.

> To establish a First Amendment retaliation claim, a plaintiff must show that (1) [his] speech was constitutionally protected; (2) []he suffered adverse conduct that would likely deter a person of

2

ordinary firmness from engaging in such speech; and (3) there was a causal relationship between the adverse conduct and the protected speech. <u>Bennett v. Hendrix</u>, 423 F.3d 1247, 1250 (11th Cir. 2005). In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech. <u>Smith v. Mosley</u>, 532 F.3d 1270, 1278 (11th Cir. 2008). However, once the plaintiff shows that [his] protected conduct was a motivating factor, the burden shifts to the defendant[s] to show that [they] would have taken the same action in the absence of the protected conduct, in which case the defendant[s] cannot be held liable. <u>Id.</u> (citing <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

<u>Castle v. Appalachian Trail Coll.</u>, 631 F.3d 1194, 1197 (11th Cir. 2011).

<u>1. Lack's speech was constitutionally protected.</u>

When Lack was removed from his position, Defendants Werre and Reiser read him a list of twenty reasons why he was being removed, five of which the Court finds involved free speech.[1] This list stated that he was being removed for, *inter alia*: promoting his debate team in his incoming-freshmen speech,[2]

---

[1] Plaintiff recalls that there were only sixteen reasons which were presented to him. <u>See</u> Pl.'s Dec., Dkt. No. [2-2] at ¶ 23. However, because most of the two lists' items are similar, if not identical, and Defendants' list is arguably more favorable to Plaintiff's case because it specifically lists his Facebook conversation as a rationale, the Court will use Defendant's list.

[2] Plaintiff's speech stated in relevant part:

High school is a social institution. Beyond the classes and the homework, lie people just like you who are a little nervous about joining

3

unjustly vilifying Defendant Principal Shannon Kersey in regards to President's

Council (the subject of his Facebook message with D.F.),[3] accusing "specific

Council members to protect self from disgruntled student body (Facebook

conversation),"[4] and his concern with "personal projects" and "policy" changes

which were not official Council duties or projects. Dkt. No. [16-10].

---

a large family. This is why I think everyone needs to find their niche.
Find that sport, activity or club that you really like. Get into it. Whether
it be football, cheerleading, band or even the debate team, find your
thing to stick onto. If you can discover your talents, broaden your mind
– with people who will help you on your path, you have found the right
place. It gives you a small group of people to start out with, and it surely
will calm you down. It will give you older students to help with work,
and something to look forward to each week.

Find your activity to get involved it. Stay with it. Be passionate about it.
This will make your experience here all the better. Teachers can only do
so much – but with this you need to take the active role.

For me, my activity was debate. Nothing more gives you the critical
thinking skills and fun of meeting new people at new places. It even
looks good for colleges.

Dkt. No. [9-1] at 6.

[3]Plaintiff stated to another student that "President's Council was shot down by
Ms. Kersey" and that "[s]he refused to give him school time for the activity and
restricted it in such a way that it would be impossible to make it anything more than a
20-minute discussion group." Dkt. No. [2-5] at 1-2.

[4]After reviewing the Facebook conversation [2-5], it is unclear what this
means.

4

As the Supreme Court stated in <u>Tinker v. Des Moines Independent Community School District</u>, 393 U.S. 503, 506 (1969), "First Amendment rights, applied in light of the special characteristic of the school environment, are available to teachers and students. It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." To that end, the Supreme Court has recognized four categories of student speech: (1) vulgar, lewd, obscene, or offensive speech under <u>Bethel School District No. 403 v. Fraser</u>, 478 U.S. 675 (1986); (2) speech which promotes illegal conduct under <u>Morse v. Frederick</u>, 551 U.S. 393 (2007); (3) school-sponsored speech which relates to legitimate pedagogical concerns under <u>Hazelwood School District v. Kuhlmeier</u>, 484 U.S. 260 (1988); and, (4) pure student expression under <u>Tinker</u>. <u>See</u> <u>Gillman v. School Bd. for Holmes County</u>, 567 F. Supp. 2d 1359, 1365 (N.D. Fla. 2008). Here, <u>Fraser</u> and <u>Morse</u> are not involved because none of Plaintiff's speech was either obscene or promotes illegal conduct.

First, the Court finds that Plaintiff's off-campus Facebook message with another student was protected by the First Amendment as it was non-violent and did not cause a material or substantial disruption in the school. <u>See</u> <u>Layshock v.</u>

5

Hermitage Sch. Dist., 650 F.3d 205, 219 (3d Cir. 2011) (en banc) (holding that a student's creation of a fake MySpace profile for his principal which stated, *inter alia*, that the principal smoked marijuana, took pills, steroids, and was a "fag" was protected speech); Evans v. Bayer, 684 F. Supp. 2d 1365, 1372 (S.D. Fla. 2010) (holding that a student's off-campus Facebook page entitled "Ms. Sarah Phelps is the worst teacher I've ever met" which was non-violent and accessed after school from plaintiff's home computer was protected speech).

Second, the Court finds that Plaintiff's speech which referenced joining the debate team is also protected. Arguably, because Plaintiff was representing AHS as the Student Body President when he made the speech, this claim would be governed by Kuhlmeier. But, because the Court finds that this speech in no way infringed on pedagogical concerns, and in fact advanced them as it encouraged students to find their niche in high school and to get involved, Plaintiff's incoming-freshmen speech was also protected.

Finally, the Court finds that Plaintiff's encouragement of changing Prom King and Queen to Prom Court so that the gay, lesbian, bisexual, and transgendered ("LGBT") community would feel more included is also protected

6

speech.[5] See Gillman, 567 F. Supp. 2d at 1369 ("In the context of speech involving the issue of homosexuality, several decisions have affirmed students' First Amendment rights.").  As well, Defendants conceded that Plaintiff's championing of this cause would be protected speech under the First Amendment, if the Defendants had actually acted on it. Thus, Plaintiff has shown that he engaged in protected speech.

> ### 2. An ordinary person would have been dissuaded from speaking because of the adverse consequence.

The Court also finds that an ordinary person would have been dissuaded from speaking because of Defendants' actions. Plaintiff was removed from his position as Student Body President, one of the most prestigious student positions in the school. As well, this position entitled him to serve on the Local School Advisory Council and to speak at graduation. Thus, the Court finds that an ordinary person would have been dissuaded.

> ### 3. Lack has shown that Defendants were subjectively motivated to take the adverse action because of Plaintiff's protected speech.

---

[5]There is an issue of fact as to whether the Defendants actually considered the Prom Court event in making their decision to terminate him. However, for the purposes of this motion only, the Court will construe the Defendants' assertion that Plaintiff pushed "personal projects" and "policy changes" to encompass this speech. The Court declines to make a finding of fact on the record before it.

7

The Court also finds that Plaintiff's speech was a motivating factor in Defendants' decision to remove him as President. Defendant Werre prepared the list which included Plaintiff's protected speech, Dkt. No. [16] at ¶ 33, Defendant Reiser was there when the list was read and did not object to it, Dkt. No. [15] at ¶ 18, and Defendant Kersey was aware of the other Defendants' basis for removing him, Dkt. No. [13] at ¶ 9.  Thus, the Court finds that Plaintiff's protected speech did motivate Defendants' termination decision.

### 4. However, Defendants will be able to prove that they would have made the same decision anyway.

Once the Plaintiff proves his protected speech motivated the Defendants' decision, the burden then shifts to the Defendants to prove that they would have made the same decision anyway. The Court finds that there is evidence which supports such a decision: 1) Plaintiff did not attend Homecoming Decoration day, wear spirit-week attire, or sell Homecoming tickets, even though Plaintiff sent the rest of the Council emails which reminded the others of their duty to do so and Plaintiff had previously agreed to complete those tasks, Dkt. No. [16] at ¶ 11; 2) After being repeatedly told that meetings would occur before school because Werre and the student-athlete members could not attend afternoon

AO 72A
(Rev.8/82)

meetings, Plaintiff continued to unilaterally schedule afternoon meetings and undermined the faculty advisors' authority, id. at ¶¶ 14-15; Dkt. No. [16-2], Dkt. No. [16-6]; 3) Plaintiff routinely cancelled meetings the day before they were to occur without permission of the faculty advisors, Dkt. No. [16-4]; Dkt. No. [16] at ¶ 29; 4) Plaintiff unilaterally removed a Student Council member after being told not to by the faculty advisors, Dkt. No. [16-8]; 5) Defendants took a survey in October 2011 which revealed that the current meeting procedure was too "formalized" for many students and that some felt the Council had become a "dictatorship" under Plaintiff's leadership,[6] Dkt. No. [16] at ¶ 26; and, 6) Plaintiff did not attend the Alpharetta's Best Dance Crew tryouts, practice, planning, or event, even though this was a Student Council event, Dkt. No. [15] at ¶ 11.

While the Court is concerned about the timing of his removal–that being within a month of the Prom Court issue and a week of the Facebook

---

[6]The Court also notes that concerns about Plaintiff's leadership style and lack of support from the rest of the council is supported by Anushka Panday's affidavit. Ms. Panday is Plaintiff's debate-team partner and considers the Plaintiff and her to be friends, but states that he has "trouble relating to and working with other students on the council," "was not accomplishing the results expected of the student body president," and that other Council members have "approached [her] with their concerns about Reuben's leadership." Dkt. No. [11] at ¶ 7.

conversation–the Court finds that the evidence supports a conclusion that the removal was precipitated by Plaintiff's failure to send an email about a class president's meeting after being personally told to do so by Rieser on February 1, 2012, and his failure to attend that meeting the next day. Dkt. No. [15] at ¶ 12. As well, the Court finds that Werre and Reiser have been counseling Plaintiff on an ongoing basis about his failures since September 2011, and Werre and Reiser even went to discuss the issue with their principal, Kersey, on three occasions prior to terminating the Plaintiff. Dkt. No. [16] at ¶¶ 16, 18, 24, 27; Dkt. No. [13] at ¶¶ 5, 6, 9. Essentially, the Court finds that Plaintiff is a bright student who is "aggressively" engaged in his causes–as his counsel pointed out at the hearing–but he did not show respect or civility to his faculty advisors or complete traditional Student Council "spirit" tasks, which, under the bylaws, he had an obligation to help carry out, regardless of his interest level. See Dkt. No. [16-1] at 1, 3 (stating that the purpose of the Student Council is to, *inter alia*, "organize student events and activities," and that the President was specifically tasked with "working with all officers on all projects . . . and generally work with the teacher advisor to coordinate all issues relating to Student Council."). The Student Body President is the face of the organization,

10

and as Werre and Reiser told the Plaintiff, it is important for that person to set a good example by "getting down and dirty in the trenches." Dkt. No. [15] at ¶ 18.

This is not to say that the Court does not value Plaintiff's zeal to change policy, or that the Court does not recognize the importance of championing the cause of inclusion for all students in school activities. Plaintiff clearly accomplished much in the way of policy changes–he helped remove the cafeteria's "utensil tax," got microwaves for the cafeteria, was assisting in getting bike racks installed at the school, and was concerned that all students felt included at Prom. However, the Court ultimately finds that his frequent failure to complete or attend any "spirit tasks" and continual undermining of the faculty advisors is sufficient to preclude a finding of a substantial likelihood of success on his First Amendment retaliation claim. As the Eighth Circuit has recognized, "discipline, courtesy, and respect for authority" are legitimate pedagogical concerns. Henerey v. City of St. Charles, 200 F. 3d 1128, 1135 (8th Cir. 1999). As the substantial likelihood of success on the merits element is not met, the Court declines to decide the other TRO factors. See American Civil

Liberties Union of Fla. v. Miami-Dade Sch. Bd., 557 F.3d 1177, 1198 (11th Cir. 2009) ("Failure to show any of the four [injunction] factors is fatal.").

### B. Conclusion

While the Plaintiff engaged in protected speech which was a motivating factor in the Plaintiff's removal, the Court finds that Plaintiff has not shown a substantial likelihood of success on the merits because the Defendants have presented sufficient evidence that they would have made the same decision to remove him even in the absence of the protected speech. Plaintiffs' Motions for TRO [2, 9] are therefore **DENIED**.

**SO ORDERED**, this __30th__ day of March, 2012.

**RICHARD W. STORY**
United States District Judge

12